IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RAYMOND PICKNEY, | § | NO. 4:18cv4545 |
| DAVID FREZEL, AND | § | |
| OTIS THOMPSON | § | |
| | § | |
| Plaintiffs | § | JURY DEMANDED |
| | § | |
| v. | § | |
| | § | |
| DIAMOND OFFSHORE | § | |
| DRILLING, INC.; DIAMOND | § | |
| OFFSHORE SERVICES | § | |
| LIMITED | § | |
| | § | |
| Defendants | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' FIRST MOTION TO COMPEL
DISCOVERY**

Plaintiffs, Raymond Pickney, David Frezel and Otis Thompson, file this Response
to Diamond's First Motion To Compel Discovery and respectfully assert as follows:

## I. INTRODUCTION

After stonewalling Plaintiffs' discovery requests seeking to uncover—and, in fact,
uncovering—Diamond's pattern/practice of race discrimination against them and other
African-American Safety Representatives, Diamond now attempts to exact revenge
against them by burdening them and this Court with a 29 page motion to compel
("Motion") designed to force them to produce documents and information they have
already produced; they do not have; are irrelevant; and/or not discoverable. For these

reasons and those detailed below, Diamond's discovery vendetta should be denied.

## II. RELEVANT FACTS

Diamond has—once again—selectively and distortedly presented the facts bearing on this latest discovery dispute. Following is a complete rendition:

### A. Pickney's Responses to Diamond's Interrogatories/Document Requests

1. On January 25, 2019, Diamond served Pickney with its First Set of Requests for Production, First Set of Interrogatories, and First Set of Requests for Admission.

2. On February 28, 2019, Pickney—pursuant to the parties' agreement—timely served Diamond with his responses to its Requests for Production and Requests for Admission. Contemporaneously, Pickney produced 433 responsive documents.

3. Because of a clerical error, Pickney's response to Diamond's Interrogatories failed to transmit on February 28, 2019. Upon discovering that error the following day (March 1, 2019), Pickney's undersigned counsel immediately transmitted Pickney's Interrogatory response to Diamond. *See* Exhibit A.

4. Because of this transmission error, Diamond—which has stonewalled (and continues to stonewall) Plaintiffs' document requests for  months—now argues that Pickney "waived" all objections to its Interrogatories.  *See* Dkt. 80, at 2.

5. On March 18, 2019, Diamond requested that Pickney supplement his response

to its Interrogatories and Requests for Production. *See* Exhibit B. In response, Pickney's counsel agreed to supplement Pickney's response to Diamond's Interrogatories and production requests by April 8, 2019. *Id.*

6. On April 8, 2019, Pickney informally supplemented his response to Diamond's Interrogatories and production requests. *See* Exhibit C (4/8/19 Newar email to Bremenstul).

7. On July 9, 2019—that is, almost three (3) months later—Diamond notified Pickney that it was unsatisfied with Pickney's April 8th response and demanded that Pickney supplement his responses a second time.

8. Accordingly, on July 22, 2019, Pickney tendered additional supplemental responses to Diamond's Interrogatory and production requests. *See* Exhibit D.

9. Between July 22, 2019 and October 9, 2019—that is, for almost ***three (3) months***—Diamond did not notify Pickney of any alleged additional "deficiencies" in his responses to its Interrogatories or document requests.

10. Yet, on October 9, 2019, Diamond resumed hounding Pickney: it again alleged that Pickney's discovery responses were deficient and demanded that he cure these "deficiencies."

11. Accordingly, on November 1, 2019, Pickney attempted for a ***third*** time to satisfy Diamond's concerns. *See* Exhibit E.

12. It is now clear from Diamond's Motion that the company is insatiable and—without an order from this Court—will continue to hound Pickney.

**B. Frezel and Thompson's Responses To Diamond's Interrogatories And Document Requests**

13. Diamond is likewise intent on hounding Frezel and Thompson.

14. On July 2, 2019, Diamond served Frezel and Thompson with Interrogatories and Requests for Production.

15. On August 9, 2019, Frezel and Thompson—pursuant to the parties' agreement—timely served their responses.

16. On October 9, 2019—that is, *two months* later—Diamond claimed, for the first time, that Frezel and Thompson's discovery responses were "deficient."

17. Accordingly, on November 1, 2019, Frezel and Thompson supplemented their responses to Diamond's document requests. *See* Exhibit E.

18. On November 7, 2019, Frezel and Thompson supplemented their response to Diamond's Interrogatories. *See* Exhibit F.

19. Unsated, Diamond filed this Motion on November 19, 2019, seeking to continue to hound Frezel and Thompson.

**C. Plaintiffs Attempt To Resolve Diamond's Motion Without Inconveniencing This Court**

20. On December 4, 2019, Plaintiffs' undersigned counsel attempted to resolve

Diamond's Motion without embroiling this Court by stating, in relevant part:

> [A]s you presumably recognize from the prior hearings, the Magistrate Judge is tiring of the parties' discovery disputes in this case.
>
> Therefore, I would suggest we try to find a resolution to Diamond's motion to compel and to my clients' forthcoming motion to compel without another hearing.
>
> To this end, please let me know by the end of this week or early next week what documents and/or other information my clients have not produced that your clients truly need.
>
> If the documents/information are truly relevant and my clients have them, I'm happy to produce them.

*See* Exhibit G (12/4/19 email from Scott Newar to Jennifer Anderson)

21. Unfortunately, Diamond's counsel failed to respond to Plaintiffs' counsel's December 4, 2019 conference invitation.

## III. Argument

As detailed below, contrary to Diamond's assertions, Pickney, Frezel, and Thompson have already produced the documents/information Diamond is seeking; after diligent searches, they do not have or have not located the requested documents/ information; and/or the requested documents/information are neither relevant nor discoverable.

### A.    Diamond's Requests For Production

Diamond falsely claims that the Plaintiffs have failed to produce information responsive to the following production requests:

> **REQUEST FOR PRODUCTION NO. 1 (to all Plaintiffs)**
>
> **All communications, documents, records, files, and tangible evidence, including all electronically stored information, that you consulted, referred to, relied upon, listed, quoted, summarized, or used to form the basis, in whole or in part, of any allegations made or claims asserted in your Complaint.**

Since Plaintiffs' ***counsel*** "consulted," "referred to," and "relied upon" various documents to draft the Complaint(s), Plaintiffs objected to this request because it invades the attorney work product privilege and attorney/client privileges. Nevertheless, without waiving these privileges, all three Plaintiffs produced all documents ***they*** consulted, referred to, or relied upon for the allegations in their Complaint.  Should Plaintiffs discover any additional documents responsive to this request, they will timely supplement their responses in accordance with Fed. R. Civ. P. 26(e).

> **REQUEST FOR PRODUCTION NO. 2 (to all Plaintiffs):**
>
> **All communications, documents, records, files, and tangible evidence, including all electronically stored information, that you consulted, referred to, relied upon, listed, quoted, summarized, or used to form the basis, in whole or in part, of your initial disclosures or responses to any of Diamond Offshore's discovery requests in this matter, including any supplements thereto.**

6

Since Plaintiffs' *counsel* "consulted," "referred to," and "relied upon" documents to draft all of Plaintiffs' discovery responses, Plaintiffs objected to this request based on the attorney work product and attorney/client privileges. Nevertheless, without waiving these privileges, all three Plaintiffs produced all responsive documents they consulted, referred to, or relied upon for their Initial Disclosures or responses to any of Diamond discovery requests. Should Plaintiffs discover any additional documents responsive to this request, they will timely supplement their responses in accordance with Fed. R. Civ. P. 26(e).

> **REQUEST FOR PRODUCTION NO. 3 (to all Plaintiffs):**
>
> **All documents relating to your employment by, and your allegations or claims against, Diamond Offshore, including personnel file and records, payroll file and records, rig information, personnel schedules or listings, job or position descriptions, job or position openings or vacancies, transfers, reductions in force, employee terminations, statistical information concerning rig count or personnel actions, policies, and procedures.**

Although the verbiage—"relating to your employment…" and "your allegations or claims against…."—encompasses information that has absolutely no relevance to this litigation and, therefore, is overbroad, all three Plaintiffs produced all documents they could locate that are responsive to this request. Should Plaintiffs discover any additional documents responsive to this request, they will timely supplement their responses in

accordance with Fed. R. Civ. P. 26(e).

Still, Diamond whines:

> None of the Plaintiffs produced any personnel file records, hiring documents, payroll records, policies/handbooks, or termination-related documents they received or collected from their employment with Diamond.

*See* Motion, at 11.

The reason Plaintiffs have not produced these documents is because—after conducting a diligent search—they do not have or have not located any. In any event, there is no legitimate basis for requiring the Plaintiffs to produce these documents when, in fact, Diamond *already* has them.

### REQUEST FOR PRODUCTION NO. 4 (to all Plaintiffs)

**All communications, emails, texts, messages, videos, recordings, and other documents, including all electronically stored information and social media posts, tweets, or replies, that reflect or record any conduct, behavior, or statement that you contend is discriminatory, retaliatory, otherwise unlawful, or that you contend otherwise supports the allegations made and claims asserted in your Complaint**.

Again, since the documents that Plaintiffs rely upon for the "allegations made and claims asserted in [their] Complaint" are based on their *counsel's* analysis of Diamond's *own* documents, this request invades the attorney work product privilege and, therefore, the Plaintiffs objected as much. Without waiving that privilege, all three plaintiffs

produced all documents that—after a diligent search—they "contend…support the allegations made and claims asserted in [their] Complaint." Should Plaintiffs discover any additional documents responsive to this request, they will timely supplement their responses in accordance with Fed. R. Civ. P. 26(e).

### REQUEST FOR PRODUCTION NO. 7 (to all Plaintiffs)

**All documents that you contend substantiate or support the allegations made and claims asserted in your Complaint, including, but not limited to: a. affidavits, declarations, and other written or recorded statements from you; b. affidavits, declarations, and other written or recorded statements from Diamond Offshore's current or former employees, agents, and representatives; c. notes made by you of any conversations, or recordings (audio and video) of conversations, with Diamond Offshore's employees, agents, and representatives; and d. logs, diaries, calendars, notes, records, and other documents made or kept by you that memorialize or reflect the way in which you allege you were treated unlawfully at Diamond Offshore.**

Plaintiffs incorporate their response to RFP 4 above. Yet, again, without waiving their attorney work product privilege, all three plaintiffs produced all documents that—after a diligent search—they "contend…support the allegations made and claims asserted in [their] Complaint." Should Plaintiffs discover any additional documents responsive to this request, they will timely supplement their responses in accordance with Fed. R. Civ. P. 26(e).

**REQUEST FOR PRODUCTION NO. 8 (to all Plaintiffs)**

**All documents and tangible items you may introduce into evidence in support of your allegations and claims at trial or at any other time during this proceeding.**

Plaintiff objected to this request on timeliness grounds because Fed. R. Civ. P. 26(a)(3) and this Court's docket control order control **when** and **what** the parties must disclose with respect to evidence they "may introduce…at trial…" *See* Fed. R. Civ. P. 26(a)(3)(B) ("Unless the court orders otherwise, these disclosures must be made at least 30 days before trial."); Fed. R. Civ. P. 26(a)(3)(iii) ("an identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party expects to offer and those it may offer if the need arises.").

Nevertheless, in response to Defendants' other production requests, all three Plaintiffs produced all responsive documents that, after diligent searches, they were able to locate.  Should Plaintiffs discover any additional documents responsive to those requests, they will timely supplement their responses in accordance with Fed. R. Civ. P. 26(e).

**REQUEST FOR PRODUCTION NO. 9**

**All documents, records, bills, statements, invoices, and accountings relating to attorney fees, paralegal fees, and expert witness fees you seek to recover in this action, including any fee agreement or arrangement between you and such persons.**

10

Fed. R. Civ. P. 54(d)(2)(B)(iv) provides that Plaintiffs are only required to **"disclose, if court so orders, the terms of any agreement about fees…" <u>at the time</u>** they file any motion for fees—which motion may not be filed until they "prevail" at trial. *See* Fed. R. Civ. P. 54(d)(2)(B)(iv) (emphasis added). In any attorneys' fee motion, Plaintiffs must also "state the amount sought…" *See* Fed. R. Civ. P. 54(d)(2)(B)(iii). Accordingly, pursuant to Fed. R. Civ. P. 54(d), all three Plaintiffs objected—and continue to object—to this request "on the ground that Federal Rule of Civil Procedure 54(d)(2) controls the timing of disclosure of Plaintiff's attorney's fees and related documents."

### REQUEST FOR PRODUCTION NO. 10 (to all Plaintiffs):

**All documents and tangible items provided to or prepared by any person you may identify or present as a testifying expert in this Action that relate in any way to the claims, defenses, facts, or subject matter of this Action, including the expert's curriculum vitae, resume, report, and database of each such person.**

Pursuant to Fed. R. Civ. P. 26(a)(2)(D)—which prescribes the timing for disclosing experts and their reports—Plaintiff objected to this request on the ground that the request contravenes this Court's Scheduling Order. *See* Fed. R. Civ. P. 26(a)(2)(D) ("*Time to Disclose Expert Testimony*. A party must make these disclosures at the times and in the sequence that the court orders…").

Again, by the parties' **agreement**, Plaintiffs' expert designations and reports

reports are not required to be disclosed until late ***February, 2020*** (30 days after Diamond's deposition, which is currently scheduled to occur in late January, 2020). Therefore, pursuant Fed. R. Civ. P. 26(a)(2)(B)(ii), Plaintiffs should not be required to disclose any expert-related information until that time. *See*

> **REQUEST FOR PRODUCTION NO. 11 (to Pickney):**
>
> **All documents, including correspondence and electronic mail, you sent to or received from the Equal Employment Opportunity Commission ("EEOC") or any other government agency relating to the allegations made and claims asserted in your Complaint.**

Pickney produced documents responsive to this request (Pickney) 175-196).

Yet, Diamond now complains that Pickney did not produce:

> his intake questionnaire and any attachments thereto; other email communications with the EEOC; the email allegedly transmitting the purported rebuttal to the EEOC, as referenced in Pickney's affidavit submitted to the Court (Rec. Doc. 37-1 at ¶ 9); the purported evidence of discrimination submitted to the EEOC as referenced in Pickney000190 and correspondence showing submission of same to the EEOC.

*See* Motion, at 12.

Pickney does not have an EEOC intake questionnaire. Pickney has found one additional email to the EEOC, which is attached as Exhibit H.

Furthermore, as Diamond well knows, Diamond—like all employers who are

subject to EEOC Charges—can *freely* obtain all documents that Pickney tendered to or received from the EEOC upon request to the EEOC. Since Diamond recently subpoenaed all three Plaintiffs' employment records from their current and former employers, Diamond should notify this Court whether it has already submitted such a *free* request to the EEOC and, if so, why it has failed to produce Pickney's EEOC file to the Plaintiffs.

> **REQUEST FOR PRODUCTION NO. 12 (all plaintiffs):**
>
> **All income tax returns for 2015 and for each successive tax year through trial, and a completed and executed original IRS Tax Information Authorization Form 4506 (attached).**

Plaintiffs objected to this request based on "relevance and invasion of privacy" because, under well-settled case law, Diamond is not entitled to Plaintiffs' federal income tax returns. Federal courts have routinely held a plaintiff-employee's federal income tax returns are not discoverable, absent the defendants' demonstration of "relevance and compelling need." *See Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc*., 2 F.3d 1397, 1411 (5th Cir. 1993); *Gattegno v. PricewaterhouseCoopers, L.L.P.* 204 F.R.D. 233 (D. Conn. 2001); *Lemanik v. McKinley Allsopp, Inc*., 125 F.R.D. 602, 609 (S.D.N.Y.1989).

As the Fifth Circuit made clear in *Energy Gathering*:

> Income tax returns are highly sensitive documents; courts are reluctant to order their routine disclosure as a part of

13

discovery. *SEC v. Cymaticolor*, 106 F.R.D. 545, 547 (S.D.N.Y. 1985) (***disclosure of tax returns for purposes of discovery ordinarily demands that the requesting party demonstrate relevancy and compelling need***). Not only are the taxpayer's privacy concerns at stake, but unanticipated disclosure also threatens the effective administration of our federal tax laws given the self-reporting, self-assessing character of the income tax system.

*Energy Gathering, Inc*., 2 F.3d 1397, 1411 (5th Cir. 1993) (emphasis added).

These courts have required plaintiffs-employees to disclose to employers only their W-2's and 1099's. *See Gattegno v. PricewaterhouseCoopers, L.L.P.* 204 F.R.D. 233 (D. Conn. 2001); *Lemanik v. McKinley Allsopp, Inc*., 125 F.R.D. 602, 609 (S.D.N.Y.1989).

Diamond has not demonstrated and cannot demonstrate any "compelling need" for Plaintiffs' federal income tax returns, especially since Plaintiffs have produced their W-2's for all post-Diamond employers.

**REQUEST FOR PRODUCTION NO. 13:**

**All documents reflecting or relating to any consultation, evaluation, assessment, treatment, referral, opinion, or communication to or from any physician, medical professional, mental health counselor, therapist, psychologist, psychiatrist, social worker, and other health care provider of any type identified in response to Diamond Offshore's First Set of Interrogatories, and a completed and executed original Medical Records Authorization for each such person (attached).**

Defendants are not entitled to *any* of Plaintiffs' medical records. Federal courts have routinely held that a plaintiff-employee's medical history/records are highly confidential and not discoverable, especially where—as here—Plaintiffs seek recovery only for *"garden-variety"* mental anguish and emotional distress. *See*, e.g., *Fitzgerald v. Cassil*, No. C-02-3857 EMC, 32, at *12 (N.D. Cal. Jul. 31, 2003); *Jackson v. Chubb Corp.*, 193 F.R.D. 216 (D.N.J. 2000); *Burrell v. Crown Cent. Petroleum*, 177 F.R.D. 376, 383 (E.D. Tex. 1997) (noting "tremendous potential for abuse that exists when a defendant has unfettered access to a plaintiff's medical records"); *Dochniak v. Dominium Management Services*, 2006 WL 3156539 at *1 (D. Minn. 2006). Therefore, Plaintiffs appropriately objected to this request "based on relevance and invasion of privacy." *See* Exhibit I; Exhibit J; Exhibit  K.

### REQUEST FOR PRODUCTION NO. 16 (to Thompson)

**All documents that you contend represent any complaints or reports of alleged discrimination or other wrongdoing that you claim you made to Diamond Offshore's management or human resources personnel.**

Thompson has no documents responsive to this request. However, Diamond has produced documents that establish that Thompson *did* complain about his termination. As a result, Thompson lodged the following objection: "Plaintiff objects because the requested documents are in the possession and control of Defendants."

**REQUEST FOR PRODUCTION NO. 18: All lawsuits, charges, administrative complaints, and any other claims for redress or damages filed by you or on your behalf, or filed against you (including any criminal actions, bankruptcy claims, or garnishment proceedings), other than the lawsuit relating to your current allegations and claims.**

Plaintiffs objected to this request based on relevance and overbreadth because it would require Plaintiffs to disclose all "claims" filed by or against them in their *entire* life. Diamond claims it is now "willing to limit this request to ten years prior to the filing of the EEOC charge, for Pickney, and the lawsuit, for Thompson and Frezel." *See* Motion, at 19. Although Plaintiffs contend this modified request is still overbroad, they will supplement their responses to produce any *extant* documents in the ten (10) year period preceding the filing of this lawsuit.

## B.   Diamond's Interrogatories

Diamond also claims—falsely—that Plaintiffs have not properly responded to their following Interrogatories:

**INTERROGATORY NO. 4 (to all Plaintiffs):**

**Identify in detail every effort you have made to obtain work since January 1, 2015, including but not limited to any job postings or advertisements reviewed, job postings or advertisements responded to, employment agencies and recruiters contacted, internet-based job search or networking platforms or other job search services consulted or used, cover letters and/or resumes sent, employment**

**applications submitted, employment opportunity inquiries made, interviews obtained, and offers of employment received.**

All three Plaintiffs have fully responded to this interrogatory. Specifically, Pickney responding by identifying all of his employers since Diamond terminated him, the dates of his employment, and his compensation. He also produced approximately 75 pages of records—including W-2's from these employers and job application records—related to his mitigation efforts.

Frezel likewise responded by identifying all of his employers since Diamond terminated him, the dates of his employment, and his compensation by these employers. *See* Exhibit J. Frezel further stated:

> Additionally, since January 1, 2015, Mr. Frezel actively sought substantially equivalent employment, including by regularly reviewing job postings on the following websites: JobsReport.com; Beyond.com; Statwire.com; ZipRecruiter.com; Monster.com Jobs; Career Alerter; RigZone.com; LENSA Job Alerts; Nexxt Smart Match; Indeed.com; Linkedin.com; Shell; Exxon; British Petroleum (BP); CareerBuilder Jobs; Geebo.com

Frezel also provided more than fifty (50) documents—including W-2 forms and other compensation records—related to his mitigation efforts.

Thompson likewise responded by identifying his only employer since Diamond terminated him (Claiborne Parish School Board ("CPSB")), the dates of his employment

there, and his compensation. Thompson also provided W-2 forms showing his compensation at CPSB. Thompson further responded:

> [I]n the period from his termination until his employment with CPSB, [he] actively searched for applied for, and obtained work after Diamond terminated his employment. [His] applications included Amerada Hess; Claiborne Parish school district; Webster Parish school district; Caddo Parish school district; Margaritaville casino; Diamond Jacks casino; Horseshoe casino; and Harrah's casino. Besides Claiborne Parish, [he] received no job offers.

*See* Exhibit K.

After diligent searches, Plaintiffs have not located any other documents responsive to Diamond's mitigation requests (either this Interrogatory or Requests for Production 19 and 20). Should Plaintiffs discover any additional documents responsive to such requests, they will timely supplement their responses in accordance with Fed. R. Civ. P. 26(e).

**INTERROGATORY NO. 5 (to all Plaintiffs)**

**List each instance in which you have been indicted, charged, and/or arrested by any state, county, local, or federal government court, department, or agency. For each such indictment, charge, and/or arrest, state the date, case number, and charge number; describe the nature of the offense upon which the indictment, charge, and/or arrest was based; state the state and county or parish in which the indictment, charge, and/or arrest occurred; state the identity of the indicting, charging, and/or arresting court, department, and/or agency; describe the disposition of the indictment, charge, and/or arrest; state the dates over which you were incarcerated for any indictment, charge, and/or arrest; and describe the conditions of any parole or**

**probation resulting from the indictment, charge, or arrest.**

Because this Interrogatory exceeds the bounds of relevance, all three Plaintiffs objected to this request based on relevance and overbreadth. Nevertheless, they responded that they had "not been charged or convicted of any felony or crime of moral turpitude in the ten (10) year period before [the lawsuit] was filed." *See* Exhibit I; Exhibit J; and Exhibit K.  Unfortunately, Defendants remain unsated.

### INTERROGATORY NO. 8 (to all Plaintiffs):

**Identify any witness(es) you intend to call at trial or whose testimony you intend to use in any manner, including but not limited to in the form of a declaration or affidavit, in this Action, and provide a summary of the information to which you believe such witnesses(es) will testify.**

Pursuant to Fed.  R. Civ. P. 26(a)(3)(A)(i)—which controls the timing for the parties to disclose *trial* witnesses—Plaintiffs objected to this request. *See* Fed. R. Civ. P. 26(a)(3)(A)(i) ("In addition to the disclosures required by Rule 26(a)(1) and (2), a party must provide to the other parties and promptly file the following information about the evidence that it may present at trial other than solely for impeachment: the name and, if not previously provided, the address and telephone number of each witness—separately identifying those the party expects to present and those it may call if the need arises…"). Under FRCP 26(a)(3)(A)(i), Plaintiffs should not be required to identify any "witness(es)

[they] intend to call at trial...” until, at most, thirty (30) days before trial. Regardless, Plaintiffs have identified persons with knowledge of relevant facts. *See* Exhibits I, J, and K.

### INTERROGATORY NO. 11 (to all Plaintiffs):

**Identify all cell or mobile phone makes and models, phone numbers, email addresses or accounts, and social media accounts and associated user names belonging to you or that you have used at any time since January 1, 2015, to refer to or communicate with anyone other than your attorney about facts relating to any of the allegations in your Complaint or any way in which you were allegedly mistreated or harmed by Diamond Offshore.**

This request seeks all telephonic and electronic media devices that Plaintiffs used “at any time since January 1, 2015, to...communicate…about facts relation got any of the allegations in [their] Complaint.” In response, all three Plaintiffs disclosed their cell phone numbers, and Pickney disclosed his email address.

Diamond now complains that Plaintiffs failed to disclose the “make and model” of their cell phones. If Defendants can explain how the “make and model” of their cell phones is somehow relevant, Plaintiffs will gladly provide that information.

Diamond also claims that Plaintiffs have not produced their social media account information. However, Plaintiffs did not use any social media accounts “to...communicate…about facts relating to any of the allegations in [their] Complaint.”

20

Therefore, they are not required to disclose any such information to Diamond.

**INTERROGATORY 13:**

**Itemize and describe each element of damages sought in this Action, including a brief description of the item of damage, the total amount claimed, and the method or formula used to compute the amount, including the time period over which the amount should be computed. <u>If the dollar amount of any item of damage is not yet known, state the method or formula by which you contend such amount should be computed (and the time period over which you contend such amount should be computed),</u> and describe all documents or other information that you claim to need in order to be able to complete your damages calculation.**

Because Plaintiffs may retain an expert witness to testify about their back pay and front pay and because the Court's Scheduling Order—as modified by the parties' agreement—does not require Plaintiffs to disclose their expert witnesses until *late February, 2020* Plaintiffs objected to this Interrogatory on "timeliness grounds." *See* Exhibit I; Exhibit J; and Exhibit K.

Nevertheless, consistent with Defendants' Interrogatory—which specifies that "[i]f the dollar amount of any item of damage is not yet known…" Plaintiffs could "state the method or formula by which you contend such amount should be computed (and the time period over which you contend such amount should be computed)," Plaintiffs responded that they:

> **seek[] back pay and benefits from the date of termination until the date of trial…front pay and benefits for the maximum period allowed by law…compensatory and punitive damages in the maximum amount allowed by law. Plaintiff[] intend[] to conduct discovery regarding and tender an expert report calculating [their] back pay and benefits and front pay and benefits in accordance with this Court's Docket Control Order.**

In light of the wording of Defendants' Interrogatory and Plaintiffs' intent to proffer expert report(s) in late February, 2020 regarding their back pay and front pay—which constitute equitable relief, not "damages"—Plaintiffs have tendered all necessary information at this time. Plaintiffs will supplement this response in late February, 2020 when their economics expert(s) tender(s) his/her expert report(s).

> **INTERROGATORY NO. 15:**
>
> **Identify every physician, medical professional, mental health counselor, therapist, psychologist, psychiatrist, social worker, and other health care provider of any type, including any clinic, medical group, hospital, or other health care facility, other than those already identified in response to the preceding interrogatory, from whom you have sought or obtained any type of evaluation or treatment within the last 15 years.**

Defendants are not entitled to *any* of Plaintiffs' medical records—let alone for 15 years in the past. Federal courts have routinely held that a plaintiff-employee's medical history/records are highly confidential and not discoverable, especially where—as here—the plaintiff-employee seeks recovery only for ***"garden-variety"*** mental anguish

and emotional distress. *See*, e.g., *Fitzgerald v. Cassil*, No. C-02-3857 EMC, 32, at
*12 (N.D. Cal. Jul. 31, 2003); *Jackson v. Chubb Corp.*, 193 F.R.D. 216 (D.N.J. 2000);
*Burrell v. Crown Cent. Petroleum*, 177 F.R.D. 376, 383 (E.D. Tex. 1997) (noting
"tremendous potential for abuse that exists when a defendant has unfettered access to a
plaintiff's medical records"); *Dochniak v. Dominium Management Services*, 2006 WL
3156539 at *1 (D. Minn. 2006). Therefore, Plaintiffs appropriately objected to this
request "based on relevance, overbreadth, and privacy grounds." *See* Exhibit I; Exhibit J;
Exhibit K.

> **INTERROGATORY NO. 16:**
>
> **Identify the data you used to calculate the alleged
> percentages in Paragraphs 7 and 41 of the Complaint,
> including all documents used while calculating those
> percentages, and the source(s) of all such data and
> documents.**

Because Pickney's counsel—including his first counsel, William Most—performed
the calculations of the lay-off percentages used in Pickney's Original Complaint and
because Plaintiffs and their counsel used Diamond's ***own*** documents to calculate those
percentages, Plaintiffs objected to this request "based on the attorney work product
privilege and because the data responsive to this request are within Defendants' custody
and control." *See* Exhibit I.

Plaintiffs subsequently filed a Third Amended Complaint that—relying on more

23

complete data produced by *Diamond* in response to Plaintiffs' document requests—re-calculates the lay-off percentages. Therefore, the data contained in the Original Complaint is now obsolete.

More importantly, Plaintiffs have retained a statistical expert, Dr. Shirlene Pearson, who, pursuant to Fed. R. Civ. P. 26(a)(2)(B), will tender an expert report in late February, 2020 chronicling Diamond's statistically disparate treatment of African-American Safety Representatives vis a vis white Safety Representatives. Under Fed. R. Civ. P. 26(a)(2)(B)(ii), Dr. Pearson is required to and will disclose the ***"facts or data"*** she uses in rendering these calculations. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii). Once Dr. Pearson tenders her expert report, Plaintiffs will supplement their responses to this Interrogatory to incorporate Dr. Pearson's calculations and the "facts or data" she uses in making those calculations.

Finally, this Interrogatory is, essentially, a "contention" interrogatory, as it requires Plaintiffs to marshal their supporting evidence—all of which derives from Diamond's documents. Therefore, even assuming *arguendo* Plaintiffs could be required to tender a substantive response, they should not be required to do so until after they have obtained all relevant information from ***Diamond*** regarding the company's alleged discriminatory pattern/practice of laying-off African-American Safety Representatives.

Diamond is continuing to refuse to produce evidence responsive to Plaintiffs'

discovery requests. Additionally, Diamond and its officials will not be deposed until late January, 2020. Therefore, Plaintiffs should not be required to respond to this Interrogatory—if at all—until after Diamond has produced its required discovery. *See*, e.g., *B. Braun Med.*, 155 F.R.D. at 527 (citing *In re Convergent Technologies Securities Litig.*, 108 F.R.D. 328, 336 (N.D. Cal. 1985)) ("[T]here is considerable support for deferring contention interrogatories until the end of the discovery period."); accord *McCrink v. Peoples Benefit Life Ins. Co.*, No. CIV. A. 2:04CV01068LDD, 2004 WL 2743420, at *4 (E.D. Pa. Nov. 29, 2004); *Fischer & Porter Co.*, 143 F.R.D. at 95; *Connecticut Indem. Co. v. Markman*, No. 93-799, 1993 WL 452104, at *4 (E.D. Pa. Oct. 28, 1993). This is because "[t]o force [a party] to respond at this stage in the litigation would require [the party] to "articulate theories of [its] case not yet fully developed." *McCrink,* 2004 WL 2743420, at *4.

### INTERROGATORY NO. 17 (to all Plaintiffs)

**Identify all positions for which you applied for employment with Defendants since January 1, 2015, the title of the position, the date you applied, how you were informed whether you were chosen for the position, and by whom.**

Thompson and Frezel did not apply for any positions with Diamond after the company terminated them. Equally, Diamond did ***not offer*** Pickney—who did re-apply for positions after his termination—Thompson, or Frezel re-employment after

25

terminating them.

> **INTERROGATORY NO. 18 (to Thompson and Frezel)**
>
> **Identify all facts and evidence in support of your allegation that Defendants were able to reassign you to work as a Safety Representative on other Diamond drilling rigs at the time your drilling rig's contract expired, including any facts and evidence that there were vacancies for which you qualified at the time your employment ended, as alleged in Paragraph 36 of the Complaint.**

Because the information requested derives from Diamond's own documents and because Plaintiffs determined that Diamond could have re-assigned them based on their counsel's analysis of those documents, Thompson and Frezel have objected to this Interrogatory "based on the attorney work product privilege and because the facts and evidence responsive to this request are within Defendants' custody and control." *See* Exhibit J and Exhibit K.

Additionally, this is another "contention" interrogatory: it seeks "**all facts and evidence in support of [Thompson and Frezel's] allegation** that Defendants were able to reassign [them] to work as a Safety Representative…" Therefore, for the reasons set forth above, even assuming *arguendo* Plaintiffs could be required to tender a substantive response to this Interrogatory, they should not be required to do so until after they have obtained all relevant information from ***Diamond*** regarding the company's alleged

discriminatory pattern/practice of laying-off African-American Safety Representatives and re-assigning white Safety Representatives to open positions.

> **INTERROGATORY NO. 6: Identify any other civil or criminal lawsuits, administrative charges before the Equal Employment Opportunity Commission or any other federal, state, or local agency, claims for unemployment compensation, claims for workers' compensation, Social Security disability claims, disability insurance claims, bankruptcy proceedings, garnishment proceedings, and any other legal proceedings filed by you or on your behalf, filed against you, or in which you have ever given sworn testimony of any kind (whether by affidavit, declaration, deposition, hearing,  trial, or other process).  For each, state the nature or subject matter of the proceeding, the court or tribunal where such proceeding is or was pending, the case or proceeding number, the parties to the proceeding, your role in the proceeding, and the status and/or disposition of the proceeding.**

This Interrogatory presents the same problems of relevance, overbreadth, and harassment as Interrogatory 18. Accordingly, Plaintiffs incorporate that response herein.

## C.    Plaintiffs' Initial Disclosures

Finally, Diamond claims—again, falsely—that Frezel and Thompson failed to timely serve Initial Disclosures and that Pickney's Initial Disclosures are "deficient." Diamond's complaint in this regard epitomizes the company's efforts to hound and harass the Plaintiffs.

First, this Court did not admit Thompson and Frezel as Plaintiffs until June 7, 2019.

*See* Dkt 48. Thereafter, the parties never conferred regarding a case management plan for Thompson and Frezel, and this Court did not set a deadline for the parties to tender their Initial Disclosures. Therefore, under Fed. R. Civ. P. 26(a)(1)(C), Frezel and Thompson have not violated any Initial Disclosure deadline, as none exists.

Second, on August 9, 2019, Thompson and Frezel served Diamond with detailed responses to Diamond's First Set of Requests for Production and Interrogatories, which contain far ***more*** information than that required by Fed. R. Civ. P. 26(a). As detailed above, all three Plaintiffs have supplemented those discovery responses. Accordingly, Plaintiffs have tendered all the information required by FRCP 26(a).

Third, Diamond did not serve ***its*** disclosures regarding Frezel and Thompson until ***November 6, 2019—that is, less than two weeks before filing its Motion.***[1] Therefore, Diamond lacks "clean hands" to complain about Frezel and Thompson's alleged failure to timely tender Initial Disclosures.

Finally, Thompson and Frezel served Diamond with their Initial Disclosures on December 16, 2019. Therefore, this issue is now moot.

It is undisputed that Pickney served his Initial Disclosures on February 5, 2019. Like Frezel and Thompson, Pickney subsequently tendered detailed initial and supplemental responses to Diamond's Interrogatories and Requests for Production, which contain far

---

[1]*See* December 17, 2019 email from Minia Bremenstul to Scott Newar (Exhibit L).

more information than FRCP 26(a) requires. Therefore, once again, Diamond is simply hounding and harassing Pickney.

## IV. CONCLUSION

For these reasons, Plaintiffs, Raymond Pickney, David Frezel and Otis Thompson, respectfully request that this Court deny Diamond's First Motion To Compel and award them all relief to which they may be justly entitled.

Respectfully submitted,

**/s/ Scott Newar**
SCOTT NEWAR
S.D. Texas Bar Number 19191
440 Louisiana, Suite 900
Houston, Texas 77002
Telephone: (713) 226-7950
Fax: (713) 226-7181 (Fax)
E-Mail: newar@newarlaw.com
ATTORNEY-IN-CHARGE
FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on December 17, 2019, I served the instant pleading on Defendants through their legal counsel via the Southern District of Texas' CM/ECF system in accordance with the Federal Rules of Civil Procedure and the Local Rules of the Southern District of Texas.

<u>/s/ Scott Newar</u>